UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **STERLING EQUIPMENT, INC.** | ) | CIVIL ACITON |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | IN ADMIRALTY |
| | ) | |
| **M/V PVT NICHOLAS MINUE,** *in rem*, | ) | |
| and **REUBEN ELBERG,** *in personam*, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

NOW INTO COURT, through undersigned counsel comes the Plaintiff, Sterling Equipment, Inc. ("Sterling"), who upon information and belief would show the following in support of its Verified Complaint against Defendants, M/V PVT NICHOLAS MINUE, and its engines, tackle, apparel, appurtenances, etc., *in rem*, ("the Vessel") and the Vessel's owner, Reuben Elberg, *in personam*.

## JURISDICTION & VENUE

1. This is an action within the admiralty and maritime jurisdiction of this Honorable Court under 28 U.S.C. § 1333, and 28 U.S.C. § 1367 as a complimentary and/or alternative remedy relief, is warranted pursuant to N.J. Stat. § 12:7C1 – 12:7C-20, the "Abandoned or Sunken Vessel Disposition Law."

2. The claims alleged in this action are admiralty and maritime claims within the meaning of Federal Rule of Civil Procedure 9(h).

3. Plaintiff seeks jurisdiction over the *in rem* defendant by arrest pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, and alternatively to claim title pursuant to N.J. Stat. § 12:7C-10.

1

4.  Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b), Rule (C)(2)(c) of the Supplemental Rules, and the general maritime law and New Jersey law, as the M/V PVT NICHOLAS MINUE is currently within the geographic jurisdiction of this Honorable Court and is moored in inland navigable waters of Newark Bay in Bergen Point, Bayonne, New Jersey, where the Vessel has been abandoned and in disrepair on Plaintiff's property.

## PARTIES

5.  Plaintiff Sterling Equipment, Inc. is a Massachusetts corporation, with its principal place of business at 555 South Street, Quincy, Massachusetts 02169, and whose yard and property includes a dock facility at or near Bergen Point in New Jersey.

6.  The M/V PVT NICHOLAS MINUE is a U.S. flagged vessel, identified as USCG No. CG010942, and was formerly a passenger ferry.

7.  Upon information and belief, the Vessel's owner is Defendant Reuben Elberg, a U.S. citizen, and may be served at his residence address of 1523 President Street, Brooklyn, NY 11213-4542, Kings County, and for purposes of New Jersey law will be provided service, and also by registered mail at this last known address of the registered owner.

## BACKGROUND

8.  At all times material hereto, the PVT NICHOLAS MINUE was a steel hull 172 foot passenger vessel originally constructed for ownership and use by the United States government and designed as a passenger vehicle ferry.

9.  The PVT NICHOLAS MINUE was originally constructed in 1956 with official number CG010942 in its registry with the U.S. Coast Guard for U.S. flag. The Vessel remained as an inspected passenger vessel and ferry through June 22, 2015, and after its ownership and

operation by the United States ended, was subsequently acquired by the Defendant, Reuben Elberg, who is the current and last known registered owner.

10. Records of the United States Coast Guard reflect that the Vessel's owner obtained an inspection by the U.S Coast Guard in July of 1997 for the purpose of obtaining a certificate of inspection, and various deficiencies were noted which would have required resolution prior to the Vessel being certified for a return to passenger service. U.S. Coast Guard records further reflect that in August of 1998, the Vessel's temporary inspection certificate expired and no work had been done to remediate outstanding items of concern from the original inspection. Accordingly, the U.S. Coast Guard deactivated the certificate of inspection case file, which shows no further activity in connection with obtaining a certificate of inspection for the Vessel since August of 1998.

11. Upon information and belief, the PVT NICHOLAS MINUE has been owned at all relevant times hereto by Reuben Elberg.

12. Though the PVT NICHOLAS MINUE has not obtained the proper inspection to operate as a passenger ferry since 1998, it has still remained floating on the navigable waters of the United States and moored at various locations where it has remained capable of navigation, and where at various points it has been navigated upon various portions of waterways in the New York and New Jersey area.

13. At all times material hereto, the PVT NICHOLAS MINUE has remained a vessel, capable of navigation, but pursuant to the best practices of boats and under the law governing the Coast Guard, federal agencies, and state agencies has attained legal status as an "Abandoned Vessel" located on or adjacent to Plaintiff's New Jersey property.

14. Prior to the abandonment of the Vessel at Plaintiff's facility in New Jersey, the Vessel was moored at Drury Marine Shipyard in Staten Island, New York, and remained there at

the direction and consent of the Vessel's owner, Reuben Elberg. Drury Marine Shipyard is located at 2581 Richmond Terrace Road in Staten Island, New York, property owned and/or managed by 2581 Richmond Terrace Realty Corporation ("2581 RTRC"). Edward Drury, the Chief Executive Officer of Drury Marine Corporation, is also an owner and/or representative of 2581 RTRC.

15. In December 2016, Sterling and 2581 RTRC entered into an agreement whereby 2581 RTRC, as landlord, leased to Sterling, as tenant, a building and land, including waterfront usage, also known as the aforementioned Drury Marine Shipyard ("Drury Marine").

16. Edward Drury informed Sterling that the PVT NICHOLAS MINUE was moored at Drury Marine pursuant to a prior agreement with Reuben Elberg that required monthly rental and storage payments for the Vessel, and that no rental payments had ever been made for the Vessel. Drury also informed Sterling that he wanted the Vessel moved so the shipyard could be rented to Sterling, but he had been unable to communicate with the Vessel's owner, Reuben Elberg, despite numerous efforts to collect outstanding fees owed for dock use and vessel storage.

17. Sterling and Edward Drury agreed that Sterling would move the Vessel to Sterling's mooring in New Jersey to facilitate Sterling's lease with 2581 RTRC. Sterling had to use its tugs to shift the abandoned PVT NICHOLAS MINUE to its property in New Jersey. In the process, considerable time and expenses were incurred to check the abandoned Vessel's mooring and to monitor the location of the Vessel. Sterling has incurred considerable and necessary dockage and mooring fees which benefit both the PVT NICHOLAS MINUE *in rem*, and the Vessel's owner, Reuben Elberg.

18. At all times material hereto, dockage and mooring fees for the abandoned Vessel were also necessary and incurred to keep the PVT NICHOLAS MINUE safely afloat and prevent

Case 2:22-cv-05914-JXN-JBC   Document 1   Filed 10/06/22   Page 5 of 15 PageID: 5

an obstruction of the navigable waters of the United States as a derelict vessel, and/or a potential wreck pursuant to federal statutes, general maritime law, and the state law of New Jersey.

19. After Sterling's lease with 2581 RTRC expired in 2020, Sterling requested permission to move the abandoned Vessel back to Drury Marine, but Drury Marine refused the request and stated that the Vessel could not return to its yard because of the history of non-payments.

20. Sterling reached out to the owner of the Vessel, Reuben Elberg, but he declined to remove the Vessel from Sterling's property.

21. Accordingly, at all times material, the Vessel remains abandoned at Sterling's New Jersey facility, and all efforts seeking its removal have been disregarded and/ or ignored by the last known registered owner, Reuben Elberg.

22. Further, at no time during Sterling's lease with 2581 RTRC did any representative of the PVT NICHOLAS MINUE or Reuben Elberg contact Sterling to address outstanding payments due for storage and the safe mooring of the PVT NICHOLAS MINUE at Sterling's New Jersey facility. Thus, as such efforts have been disregarded, the Vessel remains abandoned, and continues to deteriorate at Sterling's New Jersey location, also triggering the application of both state and general maritime law.

23. At no time during Sterling's rental of the Drury Marine site, or at any time after the expiration of the lease through the present, and during all times relevant hereto, has anyone paid rental to Sterling for mooring of the PVT NICHOLAS MINUE, or for such storage fees, which all continue to accrue.

5

24. From June 1, 2016 through present, Reuben Elberg, despite reasonable notice, has not made any payments for necessary maintenance, repair, or for services related to the PVT NICHOLAS MINUE.

25. From June 1, 2016 through present, Reuben Elberg, has not provided any personnel to the PVT NICHOLAS MINUE for the purpose of maintaining the Vessel, maintaining the Vessel's moorings, maintaining the Vessel's lighting or other markings, and has not attempted to move or shift the Vessel to any other location.

26. To date, the PVT NICHOLAS MINUE remains abandoned at its moorings at Bergen Point, and Reuben Elberg is not making any effort to either pay for services to the Vessel or for the Vessel's safekeeping, or responding to Sterling's requests to do so.

27. After learning that Drury Marine would not accept the return of the PVT NICHOLAS MINUE to its shipyard at 2581 Richmond Terrace Road, Sterling personnel wrote to the last known email address provided to them for Reuben Elberg by Edward Drury, and Sterling began forwarding invoices for storage of the PVT NICHOLAS MINUE directly to Drury Marine as the last known location where the Vessel was brought directly by its owner, Reuben Elberg.

28. Drury Marine refused to pay any rental charges or any other form of expenses for the PVT NICHOLAS MINUE and continues to refuse to pay any such expenses to date, and Sterling has not been paid for its continued services related to the abandoned Vessel at its facility.

29. Sterling provided numerous opportunities to Reuben Elberg to take possession of his Vessel and requested that he pay for the Vessel's storage and mooring as necessary for the PVT NICHOLAS MINUE and as provided by Sterling. Reuben Elberg refused to take possession of the Vessel, refused to make payment for its storage, and refused to give any direction for the

transfer of the Vessel to any location other than to demand it be returned to Drury Marine, all of which renders the Vessel legally abandoned and continues to contribute to its disrepair.

30. Sterling is unable to move the PVT NICHOLAS MINUE to Drury Marine because Drury Marine refuses to accept the Vessel at its dock – all of which is a result of the Vessel's owner, Reuben Elberg, refusing to pay for the storage, upkeep or safekeeping of the PVT NICHOLAS MINUE, at all times material.

31. Reuben Elberg, as the last known registered owner, is responsible for the safe mooring, upkeep, and storage and other fees incurred by Sterling for such services for the PVT NICHOLAS MINUE.

32. Reuben Elberg remains responsible for locating a mooring and docking facility which will accept his vessel, the PVT NICHOLAS MINUE, and his failure to timely do so renders the Vessel legally abandoned pursuant to federal and state law.

33. Reuben Elberg is responsible for the Vessel's safekeeping, maintenance, and operation and is responsible for paying for the mooring of the Vessel at Drury Marine or at any other location which is required for its safekeeping, and his failure to do so renders the Vessel abandoned.

34. Reuben Elberg is not entitled to dock the Vessel for free at Drury Marine.

35. Reuben Elberg is not entitled to dock the Vessel for free at Sterling's fleet at Bergen Point.

36. Sterling has incurred expenses for the safe dockage and mooring of the 172-foot Vessel, including, but not limited to the following:

    a.    $80,500 for the use of a push boat and crew approximately two hours each week, necessary to check the Vessel and its mooring, calculated at the rate of $350 per hour, from the end of Sterling's lease of Drury Marine Shipyard to the current date;

    b.    $7,544.80 to replace 1,200 feet of worn mooring lines;

    c.    All other necessary expenses to keep the Vessel safely afloat and prevent an obstruction of the navigable waters of the United States as a derelict vessel, and/or a potential wreck pursuant to federal statutes, general maritime law, and the state law of New Jersey.

37. At no time since June 1, 2016 has Reuben Elberg taken any actions that would be consistent with the exercise of care, custody and control of the PVT NICHOLAS MINUE or which would be consistent with maintenance, upkeep, operation, or safekeeping of the PVT NICHOLAS MINUE, all of which culminates in an abandoned and derelict vessel, which, if not for Sterling's efforts, would create an obstruction to navigable waters.

## CAUSES OF ACTION

## COUNT I – MARITIME LIEN FOR NECESSARIES

38. Sterling hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

39. Under the general maritime law, the term "necessaries" is broadly construed to encompass any goods or services that are useful to a vessel, keep her out of danger, and enable her to perform her particular function.

40. Under the general maritime law, the provision of dockage, a necessary, gives rise to a maritime lien: a privileged claim upon maritime property, arising out of services rendered to that property.

41. At all times material hereto, dockage and mooring of the PVT NICHOLAS MINUE was necessary for the basic maintenance of the Vessel.

42. From June 1, 2016 to present, Sterling has routinely checked the mooring and monitored the location of the PVT NICHOLAS MINUE, providing reasonable and necessary dockage and mooring services to the Vessel *in rem*, and for the benefit of the Vessel's owner, Reuben Elberg.

43. At no time during Sterling's lease at Drury Marine, or at any time after the expiration of the lease through present, has anyone paid rental to Sterling for mooring the PVT NICHOLAS MINUE during all times relevant hereto.

44. Sterling is therefore entitled to an Order arresting the Vessel pursuant to Rule C of the Supplemental Rules, to be held by the United States Marshal for the District of New Jersey for safekeeping until such time it is sold to satisfy Sterling's maritime lien for dockage.

**COUNT II – ABANDONMENT UNDER FEDERAL AND GENERAL MARITIME LAW**

45. Sterling hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

46. For almost seven (7) years, Reuben Elberg has left the Vessel unattended at Sterling's Bergen Point mooring, and pursuant to federal law, including but not limited to the Abandoned Barge Act, 46 U.S.C.A § 4701 et seq, the Abandoned Shipwreck Act 43 U.S.C. § 2101 et seq, CERCLA codified at 42 U.S.C. § 9601 eq seq and the Marine Debris Act, 33 U.S.C. § 1951, the Vessel has been abandoned.

47. For almost seven (7) years, Reuben Elberg has made no attempt to regain physical possession and/or control of the Vessel, triggering violations of federal law and damages to Sterling in the form of continued storage fees, and other relief.

48. At no time during Sterling's lease at Drury Marine did any representative of the PVT NICHOLAS MINUE or Reuben Elberg contact Sterling to coordinate care and maintenance for the Vessel, and no one acting on behalf of the Vessel paid any rent or mooring charges to Sterling for mooring of the PVT NICHOLAS MINUE.

49. Since June 1, 2016 through present, Reuben Elberg has not facilitated payment of any maintenance, repair, service, or mooring of the PVT NICHOLAS MINUE.

50. At no time since June 1, 2016 has Reuben Elberg taken any actions that would be consistent with the exercise of care, custody and control of the PVT NICHOLAS MINUE or which would be consistent with maintenance, upkeep, operation, or safekeeping of the PVT NICHOLAS MINUE.

51. Reuben Elberg has rejected Sterling's repeated offers to voluntarily return the Vessel to him at no cost.

52. To date, the PVT NICHOLAS MINUE remains moored at Bergen Point, and Reuben Elberg is not making any effort to pay for the Vessel's moorings or for the Vessel's safekeeping.

## COUNT III – COMPLIMENTARY STATE LAW REMEDY UNDER ABANDONED OR SUNKEN VESSELS DISPOSITION LAW

53. Plaintiff hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

54. The PVT NICHOLAS MINUE has remained in an abandoned condition on Plaintiff's property in New Jersey for over 30 days which triggers the application of state law, including N.J. Stat. § 12:7C-10, et seq, which compliments the General Maritime Law.

55. Pursuant to N.J. Stat. § 12:7C-10, the owner of the PVT NICHOLAS MINUE has failed to claim the PVT NICHOLAS MINUE for over 30 days after the Vessel has been abandoned

on Plaintiff's property and pursuant to New Jersey's "Abandoned or Sunken Vessel & Disposition Law," codified as N.J. Stat. § 12:7C-1 to 12-7C-20. Plaintiff, as landowner where the Vessel remained over 30 days, has established prima facie evidence of abandonment and established a rebuttable presumption that the Vessel is abandoned.

56. As the landowner where the vessel PVT NICHOLAS MINUE remains in an abandoned condition, Plaintiff hereby institutes proceedings pursuant to N.J. Stat. § 12:7C-10 to acquire title to the Vessel, and with acquisition of title, any other person and any other legal entity, including lienholders, is divested of title, and notice has been sent contemporaneously with the filing of this Complaint to the owner's last known address, by registered letter, also accompanying these pleadings as **Exhibit A**.

57. If within 30 days of notice pursuant to N.J. Stat. § 12:7C-11, the PVT NICHOLAS MINUE's owner fails to remove the Vessel and pay all storage costs and fees related to the abandoned Vessel, Plaintiff may also, as a complimentary remedy, obtain title pursuant to New Jersey law, and scrap and/or sell the Vessel to pay all accruing costs and fees.

58. As the landowner, Plaintiff will place notice in the newspaper of general circulation in the municipality where PVT NICHOLAS MINUE remains abandoned, and such notice, like these pleadings, will also with the letter serve to commence the 30-day period for owner to remove the Vessel and pay all storage fees and other costs related to abandonment, such that Plaintiff may acquire title to the Vessel pursuant to New Jersey law, including N.J. Stat. § 12:7C-13, and remove the Vessel, with the previous owner responsible for costs of removal, along with civil penalties that the municipality may seek.

59. As an alternative remedy, complimentary to the General Maritime Law, Plaintiff may remove the Vessel and/or otherwise dispose of the Vessel after acquiring title, publishing

notice, and report such destruction to the New Jersey Motor Vehicle Commission, with owner of the PVT NICHOLAS MINUE responsible for all costs, fees, and expenses related to abandonment and destruction.

### COUNT IV – NEGLIGENCE

60. Sterling hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

61. Under the general maritime law, a vessel owner has a duty to exercise reasonable care for his vessel.

62. For almost seven (7) years, Reuben Elberg has not acted as a prudent vessel owner, and has breached his duty to exercise reasonable care by failing to care for the Vessel, its upkeep, and its mooring.

63. From June 1, 2016 through present, Reuben Elberg has not made any payments for maintenance, repair, service, or mooring of the PVT NICHOLAS MINUE.

64. From June 1, 2016 through present, Reuben Elberg has not provided any personnel to the PVT NICHOLAS MINUE for the purpose of maintaining the Vessel or its moorings, maintaining the Vessel's lighting or other markings, or attempting to shift the Vessel to any other location.

65. Reuben Elberg has failed to maintain insurance on the Vessel.

66. Reuben Elberg has failed to properly register and document the Vessel.

67. At no time since June 1, 2016 has Reuben Elberg taken any actions that would be consistent with the exercise of care, custody and control of the PVT NICHOLAS MINUE or which would be consistent with maintenance, upkeep, operation, or safekeeping of the PVT NICHOLAS MINUE.

68. Sterling has incurred costs and suffered monetary damages as a result of Reuben Elberg's breach of this duty.

## COUNT IV – EQUITABLE RELIEF

69. Sterling hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

70. Admiralty courts are authorized to grant equitable relief, and the district courts have wide discretion in determining whether equitable relief in admiralty cases is appropriate.

71. If the ownership, handling, and custody of the PVT NICHOLAS MINUE is not resolved, the storage and maintenance of the Vessel will continue to place an undue burden on Sterling.

72. If the ownership, handling, and custody of the PVT NICHOLAS MINUE is not resolved, the Vessel's lack of upkeep and insurance will continue to pose and increasing threat to maritime commerce, the safety of other vessels, persons, and property, and the environment.

**WHEREFORE**, Sterling respectfully requests that this Honorable Court:

A. Issue a warrant for *in rem* process, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, against the whole of the Vessel, pursuant to Rule C of the Supplemental Rules;

B. Order that all persons or entities having or claiming any interests in the Vessel be cited to appear and answer under oath;

C. Declare Sterling is entitled to a maritime lien for its expenses incurred for dockage and mooring of the Vessel as described herein;

D. Award Sterling reasonable costs and attorney's fees;

  E. That the Vessel be deemed abandoned, alternatively, and pursuant to New Jersey law, allow Sterling to obtain title to the Vessel, remove the Vessel from its property, and otherwise dispose of the Vessel; and

  F. That Sterling have all such further relief as this Honorable Court deems just and necessary.

Dated: October 5, 2022

              STERLING EQUIPMENT, INC.

             BY: CASEY & BARNETT LLC

             By: /s/ Gregory G. Barnett
                Gregory G. Barnett, Esq.
                Christopher M. Schierloh Esq.
                (*Pro Hac Vice* forthcoming)
                305 Broadway, Suite 1202
                New York, New York 110007
                Tel. (212) 286-0225

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Mark Quinn declares under the penalty of perjury:

1. I am Vice President of Sterling Equipment, Inc., the plaintiff in this matter.

2. I have read the foregoing Verified Complaint and believe the contents are true.

3. The sources of my information and belief are my personal knowledge of the events giving rise to Sterling Equipment's claims and information contained within Sterling Equipment's files and records.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 5/10, 2022.

Mark Quinn
Vice President
Sterling Equipment, Inc.